700 So.2d 1062 (1997)
STATE of Louisiana
v.
Richard BASILE, et al.
No. 97-K-1162.
Court of Appeal of Louisiana, Fourth Circuit.
September 24, 1997.
*1064 Harry F. Connick, District Attorney of Orleans Parish, David Bravo, Assistant District Attorney of Orleans Parish, New Orleans, for Relator State.
Before BYRNES, JONES and WALTZER, JJ.
WALTZER, Judge.
We are called upon to decide whether a motion to suppress the evidence was properly granted.

STATEMENT OF THE CASE
Richard M. Basile, Rebecca Scaccia and Tyron Wortham were arrested 19 January 1997. The arrest register reflects that Basile, a white male, was arrested for two violations, possession of cocaine (residue), and possession of drug paraphernalia. In the same incident, Scaccia, a white female, was arrested for the identical violations, while Wortham, a black male was arrested for possession of cocaine (residue), possession of drug paraphernalia and attempt distribution of cocaine. The bill of information formally charging Basile, Scaccia and Wortham alleges only that the trio did willfully and unlawfully possess a controlled dangerous substance, to wit: cocaine. On 22 May 1997 the trial court held a preliminary hearing to determine whether there was probable cause for the arrest of Basile and Scaccia.[1] At the conclusion of the hearing the trial judge found insufficient probable cause to substantiate the charges and granted the motion to suppress the evidence.

BACKGROUND FACTS
At the 22 May 1997 hearing Police Officer Bush testified that he and Police Officer O'Neal were on patrol at about 9 o'clock in the morning in the Gert Town area in the 3400 block of Audubon Street. When the patrol car made a right turn on Audubon Street, the officer saw a stopped pick-up truck in the middle of the street. Basile was in the driver's seat; Scaccia was in the passenger seat. Outside the stopped car stood, in the words of Police Officer Bush, "a black male" (Wortham), outside the driver's side window. Basile handed something to the "black male" (Wortham) and the officer believed that a drug transaction had taken place. Police Officer Bush pulled in front of the truck, and "secured" the "black male". Rather than finding drugs or money in Wortham's hands, which might have been indicative of a drug transaction, the officer found in Wortham's right hand the object handed to him by Basile, a wrist watch. While Officer Bush dealt with Wortham and searched him, Basile tried to drive off, but was unable to do so because the truck stalled. Basile's passenger was seen to place a purse underneath the seat. Scaccia and the purse were removed from the car and a search for weapons ensued. The purse revealed what the officer described as a glass crack pipe with cocaine residue, push rods, a pair of scissors and a pocket knife. The officer testified that he also found a crack pipe on "the third person", presumably Wortham, who was searched outside the driver's car window. Other than the items described above nothing else was recovered from anyone, who now stands charged with a violation of La. R.S. 40:967, relative to possession of cocaine. Basile protested that the officer had no cause to arrest them, because they did not buy any narcotics, although they had come to that location for that purpose. Scaccia admitted that the crack pipe taken from her purse was hers. The trio was arrested although nothing was found on Basile.
During the hearing the trial court questioned the witness:
Q.... did he [Wortham] have any rock cocaine on him or any other kind of cocaine?
A. No, sir.
Q. That he could have delivered as a result of any ...
A. We did not find any.
* * * * * *
Q. So, we have a watch that was [sic] changed hands, but we have no rocks of cocaine, and we have some paraphernalia *1065 in a purse? Is that what we have here, and a pipe on a gentleman that is not here today?
A. Yes.
Q. But, no rock cocaine or any cocaine to transfer to make a transaction?
A. We did not find any.
Defense counsel agreed that the initial stop of Wortham was correct, but argued that once the presumed contraband turned out to be no more than a wristwatch, the police had no right to go any further and continue to detain and search anyone. More particularly, there was no cause to search Scaccia's purse. Additionally, counsel for Basile stressed that nothing whatsoever was found on his client.
The State argues that once the officer had reasonable suspicion to believe that the defendants were engaging in a narcotics transaction, they had the right to search Wortham, Basile, Scaccia and Scaccia's purse. The State insists that the "totality of the circumstances" make these searches reasonable under La.C.Cr.P. art. 215.1.

THE LAW
The Fourth Amendment to the United States Constitution and Article 1, Sec. 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. Searches and seizures outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well delineated exceptions. One such exception was recognized in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which held that where a police officer observes unusual conduct which leads him reasonably to conclude in the light of his experience that criminal activity may be afoot the officer may briefly stop the suspicious person and make reasonable inquiries aimed at confirming or dispelling his suspicion. Terry further held that when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officers or to others, the officer may conduct a patdown search to determine whether the person is in fact carrying a weapon. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence. If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed.

DISCUSSION AND ANALYSIS
The trial judge concluded that there was no probable cause for any search of Wortham or anyone else for that matter.
Officer Bush did not testify that he had gotten a tip that there was going to be a drug transaction at the location in question; there was no contraband in plain view in or out of the automobile; there was no testimony that there was gunfire; there was no consent to search; there was no testimony that the officers saw any suspicious bulges on Wortham, or that either officer knew Wortham from a previous encounter, nor does the testimony show that there were any exigent circumstances during this encounter. The officer did not testify that this was a high crime area notorious for drug activity. The officer testified that the encounter happened at 9 a.m. and that his suspicions were aroused when he saw a black male receive something from a white driver of a truck stopped in the middle of the street. When Officer Bush saw that Wortham had received a wristwatch his suspicion of a drug transaction had not been borne out.
After Officer Bush found a wristwatch in Wortham's hand, he was entitled, at best, to conduct a pat-down of Wortham's outer clothing. It is important to note that Officer Bush did not testify that he suspected that Wortham was armed and dangerous before he searched his person. The pat down of the outer clothing revealed no weapons, but a crack pipe was found after a search.
Officer Bush testified that Basile's attempt to drive off in his truck created further suspicion to stop and search Basile and Scaccia.

DISCUSSION AND ANALYSIS
For the police to search the driver, the passenger of the car and the passenger's purse constitutes an impermissible intrusion *1066 into their privacy. The search incident to Wortham's "suspicious behavior," which yielded nothing, ended the encounter. Wortham was then free to leave; Basile was free to drive away. It appears that Officer Bush was going to search everyone in the vicinity with the hope of finding something, after he had come away empty handed from the Wortham search. Basile's attempt to drive away and Scaccia's placing a purse down, do not furnish the reasonable suspicion requisite for the ensuing search and did not allow for the protective sweep seriatim of Wortham, Basile and Scaccia. Basile had not handed money or contraband to Wortham. Scaccia had not handed anything to anyone. What articulable knowledge of particular facts which, in conjunction with reasonable inferences drawn therefrom, was present to provide reasonable grounds to suspect criminal activity of Basile and Scaccia? State v. Daniels, 93-1769 (La.App. 4 Cir. 1/27/94), 631 So.2d 1281, 1283; State v. Bickham, 404 So.2d 929, 931 (La.1981).
Neither the less stringent standard of a Terry stop nor the standard for probable cause for an arrest was met with reference to the defendants. Our analysis shows that the stop of Basile and Scaccia was arbitrary. The wristwatch handover was found to be innocent behavior; the officer did not give Basile a ticket for standing in the middle of the street and Basile was entitled to drive off. Basile's attempt to drive off with his truck furnished nothing but an inchoate, non-particularized hunch for the officers and this hunch was insufficient grounds for the detention under La.C.Cr.P. 215.1(A). State v. Williams, 621 So.2d 199 (La.App. 4 Cir.1993).
In Williams, the defendant was seen standing in a courtyard of a housing project. When he saw the police officers, "he turned immediately and quickly walked away". Our Court found that these facts did not justify the initial stop of the defendant, and even if the stop were legal the officers provided no evidence to justify the subsequent pat-down search.
Likewise, once Wortham's detention proved fruitless, there was no justification to stop and search Basile and Scaccia. A hunch or suspicion of illegal activity or transaction is insufficient to establish reasonable grounds to stop a person. Williams, supra at 201. The items found after Scaccia's purse was searched, and any remarks or admissions she may have made thereafter were properly suppressed, under the fruit of the poisonous tree doctrine. The discovery of the cocaine residue and other items was a direct result of an illegal stop and their seizure was unlawful.
Relator cites to several cases in which Terry searches were extended to automobiles. We find these cases inapplicable to the factual situation in this case. Relator argues that the talismanic "totality of the circumstances" standard enunciated in several cases from this circuit and the Supreme Court of the United States should make up for all the deficiencies of the officers' actions during and subsequent to Wortham's Terry stop. We are not persuaded by this argument because in this case there was a complete absence of testimony that actual criminal activity was observed. There was nothing to suggest that Basile and Scaccia were about to commit an offense, as required under La.C.Cr.P. art. 215.1. The testimony does not establish that the officers had any particularized grounds to search the defendants. State v. Denis, 96-0956 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, writ denied, 97-1006 (La.6/20/97), 695 So.2d 1352. In fact, Officer Bush did not testify to any particular facts from which he could reasonably infer that the defendants were armed and dangerous. Terry searches are limited insofar as they may not be conducted in the absence of an articulable suspicion that the intrusion is justified. Sibron v. New York, 392 U.S. 40, 65, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968).

CONCLUSION
The trial court is vested with great discretion when ruling on a motion to suppress. State v. Williams, 594 So.2d 476, 479 (La. App. 4 Cir.1992). In this case it does not appear that the trial judge abused his discretion when he found no probable cause and suppressed the evidence in this case.
ACCORDINGLY, WE GRANT THE APPLICATION FOR WRIT OF CERTIORARI, *1067 DENY THE RELIEF SOUGHT AND AFFIRM THE RULING OF THE TRIAL COURT.
WRIT GRANTED. RELIEF DENIED. RULING OF TRIAL COURT AFFIRMED.
BYRNES, J., dissents with reasons.
BYRNES, Judge, dissenting with reasons:
I respectfully dissent. I would find that the seizure was valid as part of an investigatory stop.
A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La.C.Cr.P. Art. 215.1. If an officer stops a person pursuant to art. 215.1, the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.C.Cr.P. art. 215.1(B). "Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Matthews, 94-2112 (La.App. 4 Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La. App. 4 Cir. 2/25/94), 633 So.2d 819.
In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy that the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir.1992), affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir.1993), writ denied, 626 So.2d 1177 (La.1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir.1994), 641 So.2d 1081. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir.1991), writ denied, 578 So.2d 131 (La.1991).
The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but, rather whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. McKinney, 93-1425 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120; State v. Lambright, 525 So.2d 84 (La.App. 3 Cir.1988), writ denied 530 So.2d 83 (La.1988).
Deference should be given to the experience of the policemen who were present at the time of the incident. An officer should react for his safety under the conditions and events as they occur. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549.
In addition, once reasonable suspicion is found, paragraph B of La.C.Cr.P. art. 215.1 provides:
When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger. State v. Smith, 94-1502 p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082.
In Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), The Supreme Court extended Terry investigatory stops to automobiles. The court addressed whether a protective search for weapons could be extended to an area beyond the person in the absence of probable cause to *1068 arrest. The defendant was convicted of possession of marijuana found in the passenger compartment and trunk of his vehicle. The defendant was stopped after police observed him swerve into a shallow ditch. When the defendant exited the vehicle, he met the officers at the rear of the car. The defendant appeared to be under the influence of something and was not responding to the officer's questions. When the defendant then walked back towards the car, the officers followed and observed a large hunting knife on the floor. The officers subjected defendant to a pat down search for weapons. When one officer shined his flashlight into the vehicle looking for other weapons, the officer noticed something protruding from under the armrest. He lifted the armrest and saw a pouch containing marijuana. A further search of the interior of the vehicle including the glove box did not reveal more contraband. The Supreme Court held that the search of the vehicle was justified by the principles enunciated in Terry. The court found that a suspect in a vehicle detained by the police may retrieve a weapon inside the vehicle and so the police are justified in searching the vehicle for possible weapons.
In State v. Archie, 477 So.2d 864 (La.App. 4 Cir.1985), this court adopted the reasoning in Terry and Michigan v. Long. In Archie, the police stopped the defendant in a vehicle when they suspected the vehicle was stolen. They requested the driver and passenger exit the vehicle. At that point, the defendant made a sudden erratic movement ducking down and appearing to be concealing something under the seat. One officer looked under the seat and found a loaded pistol. This court upheld the search, holding that the defendant's exaggerated motion as if to place something under the seat could easily lead a reasonably prudent man to believe that his safety or the safety of others was in danger which justified the search.
In State v. Davis, 612 So.2d 256 (La.App. 4 Cir.1992), this court reversed the trial court under similar facts where drugs were found under the driver's seat after the defendant had been pulled over for a Terry stop. The officers stopped the defendant for speeding. When they pulled along side the vehicle, they observed the defendant make a motion as if he was putting something under the seat. They ordered the defendant to pull over, and the defendant exited the car. The officers then searched the interior of the car and discovered cocaine and marijuana. This court upheld the search finding that the officers did not have to allow the defendant to reenter the vehicle without checking for weapons considering the danger in roadside encounters.
In the present case, the officers had reasonable suspicion to make the investigatory stop. The truck was stopped in the middle of the street. An object was passed to the pedestrian from the occupants of the truck. This behavior certainly can be considered suspicious. The police had a right to detain the three suspects. When Bazile attempted to leave and Scaccia was observed attempting to hide her purse under the seat, the police had a right to search the purse for possible weapons. The roadside stop then became a danger to the police officers. The search and seizure were legal under the totality of the circumstances.
Accordingly, I would reverse the ruling of the trial court and deny the defendant's motion to suppress.
NOTES
[1] The prosecution represents in brief that Wortham failed to appear at arraignment and was at large at the time of the hearing.