703 So.2d 83 (1997)
STATE of Louisiana
v.
Henry STAN.
No. 97-K-2195.
Court of Appeal of Louisiana, Fourth Circuit.
October 29, 1997.
Writs Denied February 18, 1998.
Harry F. Connick, District Attorney, Michael Daniels, Assistant District Attorney, Parish of Orleans, Brandi Hilden, Law Clerk, New Orleans, for Plaintiff/Relator.
JONES, Judge.

STATEMENT OF THE CASE
The State of Louisiana seeks review of the trial court's ruling granting defendants' Motion to Suppress Evidence. We grant relator's writ but deny relief. Defendant Henry Stan was charged with possession of heroin. He filed various motions including a Motion to Suppress Evidence allegedly found in his possession. The trial court granted the motion and this timely writ application follows.

STATEMENT OF THE FACTS
The sole witness to testify at the motion hearing was Officer Clarence Gillard of the Fifth District Narcotics Section. He testified that, on April 15, 1997, he and three other officers were patrolling in unmarked police vehicles. They were near the intersection of Clouet and Burgundy Streets because they had received numerous complaints of illegal narcotics activity in that area. As they approached the intersection, they saw a *84 red pick-up truck parked in a river-bound direction. They also observed Howard Stan[1] whom they recognized "from previous narcotics arrests from that same area." Officer Gillard and his partner Detective Rousseve also recognized the defendant Henry Stan, who was in the driver's seat of the pick-up truck, as a man whom they had arrested for a narcotics violation in March. Officer Gillard testified: "Based on that information, we believed that a narcotics transaction was in process (sic), we exited our police vehicles to further investigate." Upon exiting their vehicles and identifying themselves as police officers, Detective Rousseve ordered the defendant and the passenger out of the vehicle. As the defendant complied, he placed a small silver tin foil packet on the seat of the truck. The officers were able to recognize the object as typical packaging of heroin and seized it. The defendant's arrest for possession of heroin followed.
On cross-examination of Officer Gillard, defense counsel elicited the fact that the four officers were patrolling in two unmarked police vehicles. When the officers observed the defendant's parked truck, the officers positioned the police cars so that the truck could neither move forward nor backward. One of the police cars stopped perpendicular to the front of the defendant's truck, but according to Officer Gillard, the officers in that car did so in a "main goal" of stopping Howard Stan "who had turned and walked away from the vehicle when he realized that we were there."
Officer Gillard never stated exactly where Howard Stan was in relation to the defendant or his truck. There was no testimony to show what Howard Stan was doing near the vehicle, i.e., speaking to one of the occupants, leaning into the vehicle, etc. Officer Gillard only testified that Howard Stan was near it the vehicle.

DISCUSSION
As this Court recently noted in State v. Hill, 97-1012, p. 2-3 (La.App. 4th Cir. 9/17/97), 700 So.2d 551, 552:
In State v. Sneed, 95-2326, p. 3 (La.App. 4th Cir. 9/11/96), 680 So.2d 1237, 1238[2], this Court described the standard to support an investigatory stop:
An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person "is committing, has committed, or is about to commit an offense." La.Code Crim. Proc.Ann. art. 215.1. While "reasonable suspicion" is something less than the probable cause needed for an arrest, it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4th Cir. 1/19/95), 649 So.2d 1078, 1082. The officer's past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,138 (La.App. 2nd Cir. 8/17/94), 641 So.2d 1081, 1084.
See also State v. Allen, 95-1754 (La. 9/5/96), 682 So.2d 713; State v. Williams, 95-1971 (La.App. 4th Cir. 11/16/95), 665 So.2d 112.
In Hill police officers were on patrol in an area where they had received a general tip of narcotics activity. As they arrived at the corner, they saw two men sitting or standing in front of an abandoned building. When the men saw the officers, they walked away in opposite directions. The officers stopped and frisked the men, who were unknown to them. Nothing was found in the frisk. However, the officers obtained the men's names, and a warrant check resulted in the defendant's arrest for an outstanding attachment. Contraband was found in a search incidental to the arrest. On review, this Court found no error in the trial court's ruling granting the motion to suppress because the officers "had nothing to indicate" that the defendant or his companion was engaged in criminal activity. Hill, p. 3, 700 So.2d at 552.
*85 In its application to this Court, the State relies upon State v. Burnett, 513 So.2d 391 (La.App. 4th Cir.1987), in which two officers were patrolling a high-crime area of the city. The officers, who were in plain clothes and driving an unmarked vehicle, saw the defendant and a companion standing on a street corner known as a place where drug sales had occurred. As the officers parked and watched, a known drug dealer approached the couple, spoke to the defendant's companion, shook hands, then left. The man returned a short time later, shook hands with the companion again, then departed. As the defendant and her companion walked away, the officers followed in their vehicle, then confronted the couple a few blocks later. When the officers did so, the companion shouted police, and the defendant dropped a bag containing cocaine. In finding that the trial court did not err in denying the defendant's motion to suppress the cocaine, this Court stated:
The officers testified that they suspected defendant and Calvin Dominick [her companion] to have been involved in an illegal-drug transaction. If their suspicion was reasonable, that is based upon sufficient knowledge of facts and circumstances to justify stopping the couple, then the officers were authorized under La.C.Cr.P. art. 215.1 to stop the couple and demand of them their names, their addresses, and an explanation of their actions. The officers knew that they were in an area with a high incidence of illegal-drug traffic, that the actions of the participants in the encounter they observed on the street corner were consistent with an illegal-drug transaction, and that one of the participants was a dealer of illegal drugs.
The so-called high crime areas are places in which the character of the area gives color to conduct which might not otherwise arouse the suspicion of an officer. The reputation of an area is an articulable fact upon which a police officer may legitimately rely and which is relevant in a determination of reasonable cause. [Citations omitted.] The officers were also justified in relying on their prior experiences to recognize the activity they observed as consistent with an illegal drug transaction and to recognize of the participants as a man known by them to deal in illegal drugs.
State v. Burnett, 513 So.2d at 393.
More recently, this Court addressed a factual situation similar to the instant one in State v. Basile, 97-1162 (La.App. 4th Cir. 9/24/97), 700 So.2d 1062. In that case, officers saw a pick-up truck stopped in the middle of the street. Basile was in the driver's seat; a woman named Scaccia was in the passenger seat; both were white. A black male was outside the driver's side window. Basile handed something to the "black male," and the officers believed that a drug transaction had taken place. One of the police officers pulled in front of the truck and "secured" the "black male". The officer found, not drugs or money, but a wrist watch. While the black male was being frisked or searched, Basile tried to drive off, but was unable to do so because the truck stalled. Basile's passenger was seen placing a purse underneath the seat. Scaccia and the purse were removed from the car, and a search for weapons followed. The purse revealed a crack pipe and a pocket knife. Both Basile and Scaccia were prosecuted for possession of the cocaine residue found in the pipe. Following the suppression of the evidence by the trial court, the State sought writs from this Court. This Court stated:
The Fourth Amendment to the United States Constitution and Article 1, Sec. 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. Searches and seizures outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well delineated exceptions. One such exception was recognized in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which held that where a police officer observes unusual conduct which leads him reasonably to conclude in the light of his experience that criminal activity may be afoot the officer may briefly stop the suspicious person and make reasonable inquiries aimed at confirming or dispelling his suspicion. Terry further held that when an *86 officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officers or to others, the officer may conduct a patdown search to determine whether the person is in fact carrying a weapon. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence. If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed.
* * * * * *
Neither the less stringent standard of a Terry stop nor the standard for probable cause for an arrest was met with reference to the defendants. Our analysis shows that the stop of Basile and Scaccia was arbitrary. The wristwatch handover was found to be innocent behavior; the officer did not give Basile a ticket for standing in the middle of the street and Basile was entitled to drive off. Basile's attempt to drive off with his truck furnished nothing but an inchoate, non-particularized hunch for the officers and this hunch was insufficient grounds for the detention under La. C.Cr.P. 215.1(A). State v. Williams, 621 So.2d 199 (La.App. 4 Cir.1993).
In Williams, the defendant was seen standing in a courtyard of a housing project. When he saw the police officers, "he turned immediately and quickly walked away". Our Court found that these facts did not justify the initial stop of the defendant, and even if the stop were legal the officers provided no evidence to justify the subsequent pat-down search.
Likewise, once Wortham's [the black male] detention proved fruitless, there was no justification to stop and search Basile and Scaccia. A hunch or suspicion of illegal activity or transaction is insufficient to establish reasonable grounds to stop a person. Williams, supra at 201. The items found after Scaccia's purse was searched, and any remarks or admissions she may have made thereafter were properly suppressed, under the fruit of the poisonous tree doctrine. The discovery of the cocaine residue and other items was a direct result of an illegal stop and their seizure was unlawful.
Relator cites to several cases in which Terry searches were extended to automobiles. We find these cases inapplicable to the factual situation in this case. Relator argues that the talismanic "totality of the circumstances" standard enunciated in several cases from this circuit and the Supreme Court of the United States should make up for all the deficiencies of the officers' actions during and subsequent to Wortham's Terry stop. We are not persuaded by this argument because in this case there was a complete absence of testimony that actual criminal activity was observed. There was nothing to suggest that Basile and Scaccia were about to commit an offense, as required under La. C.Cr.P. art. 215.1. The testimony does not establish that the officers had any particularized grounds to search the defendants. State v. Denis, 96-0956 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, writ denied, 97-1006 (La. 6/20/97), 695 So.2d 1352. In fact, Officer Bush did not testify to any particular facts from which he could reasonably infer that the defendants were armed and dangerous. Terry searches are limited insofar as they may not be conducted in the absence of an articulable suspicion that the intrusion is justified. Sibron v. New York, 392 U.S. 40, 65, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968). [Emphasis added.]
State v. Basile, pp. 4-8, 700 So.2d at 1065-66.
In the instant case, the officers observed the defendant in a parked vehicle in a high crime area about which they had received reports of narcotics activity. A man whom the officers recognized from previous narcotics arrests in the area was nearby. The officers recognized the defendant from a previous arrest for narcotics. However, the motion to suppress hearing testimony is void of any indication that the officers observed any apparent drug transactions at any time. The officer did not testify at the hearing that the two men were even speaking, much less engaging in any physical contact, as was the case in Burnett. The defendant never attempted *87 to flee the area or otherwise made any furtive, suspicious, or startled movements upon the approach of the police; instead his parked vehicle was boxed in by the two police vehicles, and he was ordered from his vehicle based solely upon the reputation of the area and the officers' familiarity with him and the man nearby. There was no testimony that a frisk of the man outside the car resulted in the seizure of weapons or anything such as drugs or money indicative of a drug sale. There was no testimony to indicate that the officers believed that any of the people were armed.
Counsel for the defendant argued to the trial court that, under the State's theory of the "totality of the circumstances," once a person has been arrested for narcotics activity, he is subject to being stopped and frisked despite the lack of any other evidence of current criminal activity. The trial court, after noting that it "usually gives the State a pretty wide latitude" on motions to suppress, found that the law "does require some indication of criminal activity presently going on" and that, in the absence of such, the motion to suppress should be granted because there was no basis for an investigatory stop of the defendant.[3]

CONCLUSION
The trial court's ruling does not appear to be an abuse of discretion. State v. Basile; State v. Williams, 594 So.2d 476, 479 (La. App. 4 Cir.1992). Therefore, the State's writ application is granted, but relief is denied.
NOTES
[1] The defendant's name is Henry Stan. The record does not indicate whether or not Henry is related to Howard Stan.
[2] Writ den. 96-2450 (La. 3/7/97), 689 So.2d 1371.
[3] The State apparently concedes that the heroin came into view because the defendant's detention was imminent or had actually occurred. It has long been held that property cannot be seized legally if it was abandoned pursuant to an infringement of a person's property rights, but may be seized if the property is abandoned prior to any unlawful intrusion. State v. Belton, 441 So.2d 1195, 1199 (La.1983); State v. Britton, 93-1990 (La. 1/27/94), 633 So.2d 1208; State v. Laird, 95-1082 (La.App. 4th Cir. 5/8/96), 674 So.2d 425; State v. Johnson, 94-1170 (La.App. 4th Cir. 8/23/95), 660 So.2d 942. An "actual stop" occurs when an individual submits to a police show of authority or is physically contacted by the police. State v. Tucker, 626 So.2d 707 (La.1993), 626 So.2d 720 (La.1993).