770 So.2d 29 (2000)
STATE of Louisiana
v.
Zachary LIPSCOMB.
No. 99-KA-2094.
Court of Appeal of Louisiana, Fourth Circuit.
September 13, 2000.
*31 Harry F. Connick, District Attorney, Jane L. Beebe, Assistant District Attorney, Orleans Parish, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY, III, Judge DENNIS R. BAGNERIS, Sr.
BAGNERIS, J.

STATEMENT OF THE CASE
Zachary Lipscomb, the defendant, was charged by bill of information on July 10, 1998, with possession of cocaine, a violation of La. R.S. 40:967. At his arraignment on August 18, 1998, he entered a plea of not guilty. On September 11, 1998, a six-member jury found him guilty of attempted possession of cocaine. The court sentenced the defendant on November 16, 1998, to serve thirty months at hard labor with credit for time served. That same day, the State filed a multiple bill of information charging the defendant as a third felony offender; the defendant pled guilty. Immediately thereafter, the court vacated the original sentence and re-sentenced the defendant pursuant to La. R.S. 15:529.1 to serve four years at hard labor with credit for time served. The court denied his motion to reconsider sentence.

FACTS
Officer Alfred Lee, chief of security police for the Housing Authority of New Orleans, testified that his office is in the St. Bernard Housing Development. On December 16, 1997, from his office window, he noticed the defendant loitering in a driveway in the housing development. He became suspicious of the defendant's actions when he observed a stream of people stopping and talking to the defendant and then walking away. Officer Mike Hughes, the NOPD officer assigned to the housing development, was in Officer Lee's office at the time, and he also observed the defendant's movements. Officer Lee asked Officer Hughes to investigate. Officer Lee described the defendant's attire on the day in question and made an in-court identification of the clothes the defendant wore that day. Under cross-examination he admitted that he did not see any drugs or money exchanged; however, he likened the defendant's action to "a runner situation where the person who is actually making the transaction wouldn't take the money."
Officer Michael Hughes testified and verified his assignment as liaison officer between HANO and the NOPD. On the day in question, he and Officer Lee observed the defendant's actions from their shared office window. After Officer Hughes stopped the defendant, he patted down the defendant's clothing for his safety *32 because of the nature of the complaint. He detected a cylinder-like item in the defendant's pocket. He removed the item and discovered that it was a glass tube containing a white residue, which he believed to be cocaine. Under cross-examination Officer Hughes stated that the defendant did not have any drugs or money at the time of his arrest.
Pursuant to stipulation between the State and defense as to her expertise in the identification and analysis of controlled dangerous substances, Teresia Lamb, a criminalist employed by the New Orleans Police Department, testified and explained the methods she uses to test for controlled substances. She further stated that the residue deposit in the glass tube seized from the defendant tested positive for cocaine.

ERRORS PATENT
A review for errors patent on the face of the record reveals none.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, the defendant complains that the trial court erred in failing to instruct the jury on the law of possession of drug paraphernalia.
As a preliminary matter, it should be noted that the defense failed to comply with the writing requirement for jury instructions in La. C.Cr.P. art. 807, which provides, in pertinent part:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
La. C.Cr.P. art. 801 provides that a party may assign as error the failure to give a jury charge so long as the objection thereto is made "before the jury retires or within such time as the court may reasonably cure the alleged error." In State v. Henderson, 362 So.2d 1358 (La.1978) the court held that when the trial judge entertained numerous oral requests and objections by the defendants, the judge had dispensed with the requirement that special charges be in writing and had tacitly agreed to consider such instructions as orally proposed. In this case, the defense did object to the court's refusal to charge the jury on the law of possession of drug paraphernalia, thus preserving the issue for review.
The trial court is required to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors reasonably could infer from the evidence. C.Cr.P. art. 807; State v. Johnson, 438 So.2d 1091 (La.1983). C.Cr.P. art. 807 further provides that a timely "requested special charge must be given to the jury if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given." The refusal to give a requested special charge does not warrant reversal of a defendant's conviction unless it prejudices substantial rights of the accused. C.Cr.P. art. 921; State v. Marse, 365 So.2d 1319 (La.1978); State v. Giles, 93-0103 (La.App. 4 Cir. 6/15/94), 639 So.2d 323, writs denied 94-1891, 94-1897 (La.12/19/94), 648 So.2d 399, 400.
In this case the defendant was charged with possession of cocaine. Pursuant to C.Cr.P. art. 814(A)(50) the responsive verdicts to that charge are as follows: guilty, guilty of attempted possession of cocaine, and not guilty. The defendant was convicted of attempted possession of cocaine. Nevertheless, the defendant maintains that he was prejudiced by the court' failure to charge the jury relative to possession of drug paraphernalia.
In closing arguments in this case, both the district attorney and defense counsel *33 discussed the charge of possession of drug paraphernalia. The district attorney said:
He was actually in possession of paraphernalia that the officer arrested him for. And the condition of the pipe and the paraphernalia and the whole argument on paraphernalia is going to be real important at a judge trial because that's a misdemeanor.
We are here on a jury trial, a felony charge, which as the officer said, I arrested him for the paraphernalia pending the analysis of the Crime La[b] to see what that residue is before I put a felony charge on somebody.
... He's trying to be fair.
... They submit that crack pipe, and they had it tested. And sure enough, just what the officer said he thought, it was in fact positive for cocaine.
Defense counsel argued:
... The D.A. said there is a law against possessing this. It's a misdemeanor offense, six months in jailnot the five years you can get on cocaine possession...
... Let me read this to you ... this is in our drug code Title 40[La. R.S. 40:1031(A)(12)]. "as used in this part unless the context clearly otherwise indicates that the term `drug paraphernalia' shall mean and include: objects used, intended for use, or designed to use in ingesting, inhaling or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body such as metal, wood, acrylic, glass, stone, plastic, or ceramic pipes."
. . .
He's guilty. And this is a guilty plea form. And I would sit him down right this minute, fill it out, and have him sign it as a plea of guilty to possession of drug paraphernalia because that is what he is guilty of because that's what he intended to do when he had this in his possession, to posses[s] drug paraphernalia.
The trial judge instructed the jury that if the State did not prove the three elements of the crime of possession of cocaine, their verdict should be not guilty. The trial judge's statements were adequate to ensure the jury's proper understanding of the offense charged and all responsive verdicts. Inasmuch as possession of drug paraphernalia is not a responsive verdict to possession of cocaine, La. C.Cr.P. art. 814(A)(50), had the judge agreed to so charge the jury, it would have been error.
Under these circumstances, the question of the charge of possession of drug paraphernalia was placed before the jury by the defense and prosecution. Moreover, charging the jury as to possession of drug paraphernalia would have entailed an explanation from the judge. Therefore, even if the requested special charge was refused erroneously, the defendant was not prejudiced. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his next assignment of error, the defendant contends that the evidence is insufficient to support his conviction.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id.
*34 In this case, the defendant was charged with possession of cocaine but convicted of the lesser-included offense of attempted possession of cocaine. To support a conviction for possession of cocaine, the State must prove that the defendant was knowingly in possession of the illegal drug. To prove an attempt, the State must show that the defendant committed an act tending directly toward the accomplishment of his intent to possess cocaine. State v. Lavigne, 95-0204 (La.App. 4 Cir. 5/22/96), 675 So.2d 771, writ denied 96-1738 (La.1/10/97), 685 So.2d 140; State v. Chambers, 563 So.2d 579 (La.App. 4 Cir. 1990).
The elements of knowledge and intent are states of mind and need not be proven as facts but may be inferred from the circumstances. State v. Guillard, 98-0504 (La.App. 4 Cir. 4/7/99), 736 So.2d 273. The factfinder may draw reasonable inferences to support these contentions based upon the evidence presented at trial. Id. When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. Rev.Stat. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). This is not a separate test from Jackson v. Virginia, but it is instead an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984); State v. Addison, 94-2431 (La.App. 4 Cir. 11/30/95), 665 So.2d 1224.
In State v. Guillard, supra, this court affirmed the defendant's conviction for attempted possession of cocaine in a case in which a police officer testified that he retrieved a crack pipe from the defendant's pants pocket and that the pipe appeared to contain cocaine residue. The court rejected the defendant's argument that the State failed to prove that he knew there was cocaine in the pipe or that he attempted to possess cocaine. The court stated that the defendant's possession of a crack pipe with visible cocaine residue in it allowed an inference that the defendant had the intent to attempt to possess cocaine.
Similarly, in State v. Lewis, 98-2575 (La. App. 4 Cir. 3/1/00), 755 So.2d 1025, this court affirmed a defendant's conviction for attempted possession of cocaine based upon the arresting officer's testimony. The officer testified that he noticed the defendant sitting in front of an abandoned building. When the officer approached the defendant, he noticed that the defendant seemed incoherent and smelled of alcohol. The officer arrested the defendant for public intoxication and patted him down. The officer retrieved from the defendant's coat pocket a glass crack pipe containing a white residue the officer believed to be cocaine. Subsequent testing confirmed the officer's belief.
Likewise, in State v. Lee, 98-1834 (La. App. 4 Cir. 3/1/00), 755 So.2d 1029, the court affirmed the defendant's conviction of attempted possession of cocaine. The defendant was stopped by police for investigation of narcotics activity. The police found a glass crack pipe, containing a white residue that the police believed was cocaine, in the defendant's pants leg. Citing State v. Guillard, supra, this court held that possession of a crack pipe with visible cocaine residue in it allowed an inference that the defendant had the intent to attempt to possess cocaine.
*35 This case presents the same evidence presented in Guillard, Lewis and Lee. In those cases, the defendant was in possession of a crack pipe containing cocaine, and the arresting officers testified that cocaine residue was visible in the pipe at the time of the arrest. These factors were sufficient to establish the element of guilty knowledge in those cases, and they are sufficient to establish the element of guilty knowledge in this case as well. Viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of the offense of possession of cocaine present beyond a reasonable doubt. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant asserts in his third assignment of error that his trial court counsel was ineffective in failing to file a motion to suppress the evidence.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir.1986).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
To decide whether the defendant's trial counsel was ineffective, it is necessary to consider whether there is a reasonable probability that the trial court would have granted a motion to suppress the evidence. Therefore, an examination of whether the crack pipe was obtained by an unreasonable search and/or seizure is in order.
The Fourth Amendment to the United States Constitution and Article 1, Sec. 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. Searches and seizures outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. State v. Stan, 97-2195, p. 5 (La.App. 4 Cir. 10/29/97), 703 So.2d 83, 85, writ denied, 97-2852 (La.2/18/98), 709 So.2d 762, quoting State v. Basile, 97-1162 (La.App. 4 Cir. 9/24/97), 700 So.2d 1062, writ denied, 97-2503 (La.12/19/97), 706 So.2d 455.
"A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense...." La. C.Cr.P. art. 215.1; State v. Sheehan, 97-2386, p. 3 (La.App. 4 Cir. *36 12/9/98), 740 So.2d 127, writ granted, 99-0725 (La.7/2/99) 747 So.2d 3; State v. Bentley, 97-1552, p. 7 (La.App. 4 Cir. 10/21/98), 728 So.2d 405, 410, writ denied, 98-3213 (La.5/7/99), 741 So.2d 27. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989. "Reasonable suspicion" is something less than the probable cause needed for an arrest, and must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144; State v. Smiley, 99-0065, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 743, 745, writ denied, 99-0914 (La.5/14/99), 743 So.2d 651. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Mitchell, 97-2774, (La. App. 4 Cir. 2/3/99), 731 So.2d 319.
In this case, Officers Lee and Hughes testified that they were security officers in the St. Bernard Housing Development and their purpose was to investigate suspicious activity in the area. Both officers observed the defendant engaged in suspicious behavior, which their experience indicated was associated with drug activity. The officers saw a steady stream of people approach the defendant, briefly converse, and then walk away. Officer Lee described the activity as "a runner situation". These facts support a finding of reasonable suspicion to stop the defendant.
If a police officer stops a person whom he reasonably suspects is committing, has committed, or is about to commit a crime, pursuant to art. 215.1(A), and reasonably suspects he is in danger, the officer may frisk the outer clothing of such person for a dangerous weapon; if the officer reasonably suspects that the person possesses a dangerous weapon, he may search the person. La. C.Cr.P. art. 215.1(B); State v. Curtis, 96-1408, pp. 2-3 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, 1289. "The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger." State v. Williams, 98-3059, p. 4 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144, quoting State v. Smith, 94-1502 p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. As noted by this court in State v. Denis, 96-0956 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, writ denied, 97-1006 (La.6/20/97), 695 So.2d 1352:
While it is true that an officer is never justified in conducting a pat-down for weapons unless the original detention itself was justified, a lawful detention for questioning does not necessarily give the officer the authority to conduct a pat down for weapons. Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. Further, the officer's belief is not reasonable unless the officer is "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. [40] at 64, 88 S.Ct. [1889] at 1903, 20 L.Ed.2d [917] at 935 [1968]. It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a "substantial possibility" of danger.
State v. Hunter, 375 So.2d 99, 101-02 (La. 1979) (final citation omitted).
We recognize that the police have the right to ensure their own safety in an encounter with a suspected criminal. Under both our federal and state Constitutions, however, this right must be balanced against an individual citizen's right to be free from unreasonable searches. Although sometimes appearing to be a legal technicality, Article *37 215.1 B represents the legislature's attempt to maintain that balance by allowing an officer, who has lawfully stopped an individual, to perform a pat-down for weapons, but only if he "reasonably suspect [sic] that he is in danger."
A police officer's duty to enforce and uphold the laws includes not only those statutes that define and prohibit criminal conduct, but also those which define and limit the government's intrusion into the lives of its citizens. Unless the plain language of Article 215.1 B is interpreted as authorizing an officer to frisk every pedestrian who is stopped pursuant to subsection A, the only way a court can determine if the officer reasonably suspected that he was in danger is to require him to express that suspicion, and explain upon what it is based. Eliminating the requirement for such articulation not only eviscerates this statute, but also opens the door for potential abuse by the rare officer who acts upon personal prejudices rather than actual observation and experience.
96-0956 at pp. 7-8, 691 So.2d at 1299.
In this case Officer Hughes testified that after he stopped the defendant, he conducted a pat down for "[his] safety and due to the nature of the complaint." In many instances, the appearance of drug dealing itself is an articulable fact that may support an art. 215.1(B) frisk. State v. Fortier, 99-0244 (La.App. 4 Cir. 1/26/00), 756 So.2d 455. "We can take notice that drug traffickers and users have a violent lifestyle, which is exhibited by the criminal element who are generally armed due to the nature of their illicit business. Therefore, a police officer should be permitted to frisk a suspect following an investigatory stop (based on reasonable suspicion) relating to drug activities." State v. Curtis, 96-1408, pp. 9-10 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, 1292. See also State v. Williams, 98-3059 (La.App. 4 Cir. 3/3/99), 729 So.2d 142. In the instant case, Officer Hughes' testimony indicates that he believed that the defendant's suspicious activity was drug related, and as such, because Officer Hughes feared for his own safety, he patted down the defendant's clothing.
The final area of inquiry concerns whether Officer Hughes' seizure of the crack pipe exceeded the parameters of a weapons search. Even though the State has shown a basis for the stop and the frisk, the State failed to show that the crack pipe was discovered pursuant to the "plain feel" exception recognized in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Under Dickerson, when a police officer lawfully pats down a suspect's clothing for weapons and feels an object whose contour or mass makes its identity immediately apparent to be contraband, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons
In State v. Denis, pp. 9-10, 691 So.2d at 1300, this court set forth the requirements of the "plain feel" exception:
[E]vidence discovered during a lawful investigatory frisk may be seized under the "plain feel" exception to the warrant requirement, as explained in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). However, just as the "plain view" doctrine requires that an object's incriminating character be immediately obvious when seen, the "plain feel" doctrine requires the tactile discovery of "an object whose contour or mass makes its identity immediately apparent." Thus, in State v. Parker, 622 So.2d 791 (La.App. 4th Cir.), writ denied, 627 So.2d 660 (1993), the seizure of a matchbox containing cocaine detected during a patdown search was found not to fall within the "plain feel" exception because there was no evidence that a matchbox's shape was identifiable as contraband. In contrast, in State v. Stevens, 95-501 (La. App. 5th Cir.3/26/96), 672 So.2d 986, the seizure of drugs in a matchbox detected during a lawful pat-down was upheld *38 because the officer testified that her prior experience indicated that most street-level crack dealers carried their drugs in a matchbox. Similarly, where testimony establishes that an object detected during a pat down was immediately identifiable as a "crack pipe," suppression of the cocaine residue contained within the pipe is not required. State v. Lavigne, 95-0204 at p. 9, 675 So.2d at 778; State v. Livings, 95-251, pp. 5-6 (La.App. 3d Cir. 11/15/95), 664 So.2d 729, 733, writ denied, 95-2906 (La.2/28/96), 668 So.2d 367.
The sum and substance of Officer Hughes' trial testimony concerning his seizure of the crack pipe was:
... And I detected the cylinder-like item in his pocket. At that time I removed that item, and the item was a glass cylinder tube with a white residue in it.
Nothing in Officer Hughes' testimony explains that his "tactile discovery" of the "cylinder-like item" led him to conclude that it was either a weapon or contraband. His testimony suggests that only upon removing the object was he aware that it was a crack pipe. The seizure of the crack pipe exceeded the scope of the frisk and cannot be justified under the "plain feel" exception of the warrant requirement.

SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER ONE
The reasons expressed in the discussion of assignment of error number one preclude a discussion of this supplemental assignment.

SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER TWO
The reasons expressed in the discussion of assignment of error number two preclude a discussion of this supplemental assignment.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are reversed and this matter is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
McKAY, J., concurs in the result.