787 So.2d 404 (2001)
STATE of Louisiana
v.
Jamal HOWARD.
No. 2000-KA-2405.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 2001.
*406 Harry F. Connick, District Attorney of Orleans Parish, Juliet Clark, Assistant District Attorney of Orleans Parish, New Orleans, for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, for Defendant/Appellant.
Court composed of Judge JAMES F. McKAY, III, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr.
McKAY, Judge.

STATEMENT OF THE CASE
The defendant Jamal Howard was charged by bill of information on June 16, 1998, with possession of cocaine, a violation of La. R.S. 40:967(C). The defendant pleaded not guilty at his June 26, 1998 arraignment. The trial court denied the defendant's motion to suppress the evidence on August 5, 1998. On March 18, 1999, this court denied the defendant's application for supervisory writs as to the denial of his motion to suppress.[1] On August 26, 1999, the defendant withdrew his former plea of not guilty and entered a plea of guilty as charged pursuant to State v. Crosby,[2] reserving his right to appeal the denial of his motion to suppress. The trial court sentenced the defendant to two and one-half years at hard labor. That same date the defendant pleaded guilty to being a second-felony habitual offender. The trial court vacated the original sentence, and resentenced the defendant to two and one-half years at hard labor, with credit for time served. On October 14, 1999, this court denied as moot the defendant's writ application relative to the denial of his motion to suppress.[3] On April 19, 2000, this court granted the defendant's writ application for the sole purpose of transferring it to the trial court to be treated as a motion for an out-of-time appeal.[4] The trial court granted the defendant an out-of-time appeal on May 5, 2000.

*407 FACTS
New Orleans Police Officer Eric Gillard testified that he arrested the defendant on May 23, 1998. He and his partner were on patrol in an area known to them for illegal drug activity. As they approached a particular intersection, Officer Gillard observed an irate female uttering obscenities and making obscene hand gestures. She advised the officers that a subject wearing blue jeans and a white T-shirt, whom she knew as "Jamal," had attempted to sell her recovering drug-addict daughter narcotics. The woman advised the officers that she had informed subjects in the area not to sell her daughter any type of narcotics. The officers began canvassing the area, looking for the subject, and located him walking in the 400 block of Warrington Drive with another individual. The officers stopped the two individuals, and as they were patting them down, Officer Gillard observed the defendant attempting to place his right hand into his right pocket three times. The defendant told the officer that the pants he had on belonged to someone named "Chris." As the interview continued, Officer Gillard noticed the defendant nervously looking around, as if he were preparing to take flight. At that point, Officer Gillard handcuffed the defendant, "to avoid any type of confrontation." He began to feel the defendant's right front pocket, and detected small hard objects. The defendant did not respond when Officer Gillard asked him about the objects. Officer Gillard stated that, based on his previous narcotics experience, and in light of the previous citizen complaint, he believed the objects he felt were some type of "contraband." The officer removed the objects from the defendant's pocket, discovering that they were three small plastic-wrapped pieces of what appeared to be crack cocaine.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR
In his sole assignment of error, the defendant claims that the trial court erred in denying his motion to suppress the evidence.
Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement. State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, 901, cert. denied, Edwards v. Louisiana, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La. C.Cr.P. art. 703(D); State v. Kirk, 00-0190 (La.App. 4 Cir. 11/15/00), 773 So.2d 259; State v. Jones, 97-2217, (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Devore, 00-0201 (La.App. 4 Cir. 12/13/00), 776 So.2d 597; State v. Mims, 98-2572 (La. App. 4 Cir. 9/22/99), 752 So.2d 192, 193-194.
The defendant first argues that officers did not lawfully stop him. La. C.Cr.P. art. 215(A) provides that:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
"Reasonable suspicion" to stop is something less than the probable cause required for an arrest, and the reviewing *408 court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Jones, 99-0861 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 36-37; State v. Littles, 98-2517 (La.App. 4 Cir. 9/15/99), 742 So.2d 735, 737. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989; State v. Tyler, 98-1667 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 770. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. State v. Carter, 99-0779 (La.App. 4 Cir. 11/15/00), 773 So.2d 268. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Lipscomb, 99-2094 (La.App. 4 Cir. 9/13/00), 770 So.2d 29, 36; State v. Oliver, 99-1585 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Jackson, 99-2993 (La.App. 4 Cir. 10/18/00), 772 So.2d 808; State v. Dennis, 98-1016 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Hall, 99-2887 (La.App. 4 Cir. 10/4/00), 775 So.2d 52; State v. Cook, 99-0091 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254, writ denied, 99-1523 (La.10/29/99), 748 So.2d 1160.
In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the U.S. Supreme Court found that a police officer had reasonable suspicion to make an investigatory stop of a person seated in a nearby parked car, where the officer had just received a tip from a known reliable informant that the person was carrying narcotics, as well as a gun in his waistband. The court distinguished the case from one involving an anonymous informant, noting that the informant, who had given the tip in person, may well have been subject to arrest for making a false complaint had the investigation proved the tip unfounded.
In State v. Smiley, 99-0065 (La.App. 4 Cir. 3/3/99), 729 So.2d 743, writ denied, 99-0914 (La.5/14/99), 743 So.2d 651, two police officers on Bourbon Street were approached by an "unknown" citizen, who reported that an individual in a nearby truck had just tried to sell him drugs. As the officers observed the truck, three individuals exited the truck and went into a nearby bar. The unknown citizen identified one of them as the individual who had tried to sell him drugs. This court held that under those facts police had reasonable suspicion to detain the individual to investigate the citizen's complaint. Even though the complaint came from an "unknown" citizen, the circumstances surrounding the giving of it indicated a certain degree of trustworthiness.
In State v. Fayard, 537 So.2d 347 (La. App. 4 Cir.1988), writ denied, 541 So.2d 871 (La.1989), the doorman of a lounge alerted a police officer working a paid detail that he felt a gun on the defendant's person when the defendant bumped into him. A lounge patron also informed the officer that the defendant resembled a man wanted for recent boat thefts in the area. A backup officer subsequently observed a bulge under the defendant's jacket, confirming for him the information *409 received in the initial complaint by the doorman. This court held that this evidence was sufficient to justify an investigatory stop.
In State v. Mims, 98-2572 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, a police officer received information from a "registered" informant, of unknown reliability, that a particularly described individual was selling cocaine on St. Louis Street, between Bourbon and Burgundy Streets, in the French Quarter. The officer went to the location fifteen minutes later, saw an individual fitting the description given by the informant, and made an investigatory stop. This court held that merely verifying a clothing description given by a "registered" informant of unknown reliability was not sufficient corroborating evidence in and of itself to justify the stop.
In the instant case, the officers received an on-the-scene complaint from a visibly upset citizen, that a person named "Jamal," wearing blue jeans and a white T-shirt, had attempted to sell her daughter narcotics. The citizen further volunteered that her daughter was a recovering drug addict, and that she had informed individuals in the area not to sell drugs to her daughter. The officers knew from experience that the area was rife with drug activity. Officer Gillard said that after the complainant walked away, he and his partner canvassed the area for the described individual, and came upon the defendant walking down the street. It can reasonably be inferred from the officer's testimony that the officers immediately began searching for the individual after receiving the complaint, and soon thereafter found a person in the area fitting the suspect's description. That person was the defendant.
The defendant describes the citizen in this case as an "uncooperative tipster of unknown reliability." While the defendant is correct to the extent that there is nothing to indicate that the citizen had ever given any information to police leading to arrests and/or convictions, and the citizen's identity was unknown to the officers, she was not an anonymous informant, such as a telephone tipster to a drug hotline. Informants may have reputations of being reliablenot average citizen-complainants. The citizen did not wish to give any further information to the officers, i.e., make an official complaint, perhaps fearing retaliation. Recognizing the harsh realities of life for those living in drug-infested areas, this reticence does not undermine her credibility. The complainant did not seek out the officers; they stopped to assist her after observing her in an obviously agitated state. It can be noted that, as in Adams v. Williams, supra, it is probable the citizen could have been arrested if she falsely reported the occurrence. See La. R.S. 14:59(5).[5] While the facts of the instant case might not be as strong as those in the U.S. Supreme Court case of Adams v. Williams, supra, where the informant was personally known to the officer as reliable, or this court's decisions in Smiley and Fayard, where the complaining citizens were at the scenes of the respective stops, the facts and circumstances are stronger than in Mims, as they point to an unsolicited legitimate complaint made personally to the officers after they stopped to assist the obviously upset citizen. The officers in the instant case had no reason to doubt the information given to them by the distraught mother. Accordingly, when the officers came upon an individual in the area matching the description given by the citizen, they had reasonable suspicion to *410 believe he had committed a crimeattempted distribution of narcotics.
The defendant next argues that even if the officers had reasonable suspicion to make the stop, the subsequent seizure of the cocaine was unlawful. If a police officer stops a person pursuant to art. 215.1(A) whom he reasonably suspects is committing, has committed, or is about to commit a crime, and reasonably suspects that he is in danger, the officer may frisk the outer clothing of such person for a dangerous weapon; if the officer reasonably suspects that the person possesses a dangerous weapon, he may search the person. La.C.Cr.P. art. 215.1(B); State v. Jones, 99-0861 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 38. The officer need not be absolutely certain that the person is armed, but the facts must justify a belief that the officer's safety or that of others is in danger. State v. Williams, 98-3059 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144 quoting State v. Smith, 94-1502 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. There is a recognized and close association between narcotics traffickers and weapons. State v. Wilson, 00-0178 (La.12/8/00), 775 So.2d 1051, citing United States v. Trullo, 809 F.2d 108, 113-114 (1 Cir.1987), cert. denied, Trullo v. United States, 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987). Thus, in Wilson, the Louisiana Supreme Court upheld an officer's protective frisk of an individual whom the experienced former undercover narcotics officer observed in a known drug area, crouched down next to the driver's side door of an occupied vehicle. Based solely on the recognized drug trade-weapons connection, the court found that the officer had "a articulable and objectively reasonable basis for conducting a self-protective search of the defendant's outer clothing for weapons." Id; See also State v. Small, 00-0564 (La.3/24/00), 762 So.2d 1071 (finding that the trial court erred in granting defendant's motion to suppress drugs seized during officers'"self-protective search for weapons based on their experience that weapons were often associated with narcotics trafficking.") In Jones, supra, this court, in reviewing the propriety of a weapons frisk, noted:
[I]n many instances, suspicion of drug dealing itself is an articulable fact that may support a frisk pursuant to La. C.Cr.P. art. 215(B). State v. Fortier, 99-0244 (La.App. 4 Cir. 1/26/00), 756 So.2d 455 ("We can take notice that drug traffickers and users have a violent lifestyle, which is exhibited by the criminal element who are generally armed due to the nature of their illicit business. Therefore, a police officer should be permitted to frisk a suspect following an investigatory stop [based on reasonable suspicion] relating to drug activities."), 99-0244 at p. 7, 756 So.2d at 460, quoting State v. Curtis, 96-1408, pp. 9-10 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, 1292. See also State v. Williams, 98-3059 (La.App. 4 Cir. 3/3/99), 729 So.2d 142 (officer's testimony that he frisked a defendant suspected of drug activity to look for weapons for his own safety was sufficient to validate a frisk pursuant to La.C.Cr.P. art. 215(B)). (footnote omitted).
99-0861 at p. 14, 769 So.2d at 38-39.
In the instant case, Officer Gillard did not testify that his frisk of the defendant's clothing was motivated by a concern for his safety or the safety of others, or that for any reason he suspected that the defendant was armedalthough he noted that the defendant reached into his pocket three times after being stopped, but before being frisked. Nevertheless, as the Louisiana Supreme Court wrote in State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881, "the fact that the officer does not have *411 the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action," citing Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996), quoting Scott v. U.S., 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978). Therefore, since the objective facts show that the defendant was lawfully stopped based on an objectively trustworthy complaint that he had offered to sell drugs to the complainant's daughter, Officer Gillard was justified in frisking the defendant's outer clothing because of the recognized drug trade-weapons connection.
Officer Gillard testified that during the frisk he felt "several small, hard objects" in the defendant's right front pants pocket, the one he had seen the defendant put his hand into several times after being stopped. The officer stated that, based on his experience, and in light of the citizen complaint that the defendant had attempted to sell her daughter "some type of illegal narcotics," he believed the hard objects to be "some type of contraband." When a police lawfully pats down a suspect's outer clothing and feels an object "whose contour or mass makes its identity immediately apparent," "if the object is contraband," it can be lawfully seized without a warrant. Minnesota v. Dickerson, 508 U.S. 366, 369-70, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993); Wilson, supra. In Wilson, the officer testified that as he patted down the defendant's nylon jacket he felt "what appeared to be a bag of small rock-like objects." He further stated that he knew immediately from his long experience in the field that the package contained rock cocaine for retail sale on the streets. The difference between Wilson and the instant case is that Officer Gillard did not specify what type of contraband he felt.
In State v. Fortier, 99-0244 (La.App. 4 Cir. 1/26/00), 756 So.2d 455, writ denied, 00-0631 (La.9/22/00), 768 So.2d 1285, the issue was whether counsel was ineffective in failing to file a motion to suppress the evidence. Police stopped the defendant because they suspected he had just engaged in a drug transaction, and he motioned toward his sock after he saw the police. An officer testified that during a subsequent weapons frisk he discovered a bag of marijuana in the defendant's sock. There was no testimony at all as to what the officer's impressions were upon feeling the bag. Nevertheless, this court found that the requirements of Minnesota v. Dickerson's plain feel exception were satisfied, noting that the officer was a member of squad primarily concerned with narcotics and weapons violations, and concluding:
We can thus safely infer that, based on his training and experience, officer Lewis could distinguish the contour and "feel" of marijuana; and it is highly likely he did so in this instance, especially since the occurrence of a lawful weapons frisk has been established.
99-0244, 756 So.2d at 462.
In State v. Lipscomb, 99-2094 (La.App. 4 Cir. 9/13/00), 770 So.2d 29, the issue was whether the defendant's attorney had been ineffective in failing to file a motion to suppress a crack pipe seized from the defendant. The police officer saw numerous people stop and talk to the defendant, and then walk away, which the officer said was consistent with the defendant acting as a drug "runner." The officer stopped the defendant and patted him down, detecting a cylinder-like item in the defendant's pocket, which turned out to be a crack pipe. This court held that the seizure of the crack pipe was not justified under the *412 "plain feel" exception, as the police officer did not testify that he believed the cylinder-like object was either a weapon or contraband. Accordingly, this court found that the defendant had been prejudiced by his counsel's failure to file the motion to suppress, and reversed his conviction and sentence.
In State v. Brown, 99-1097 (La.App. 4 Cir. 7/12/00), 773 So.2d 742, officers stopped the defendant, a known drug offender, when he fled through a known drug area after seeing them. An officer patting down the defendant felt a large bulge in his front pants pocket. He asked the defendant what the object was, and the defendant did not respond. The officer asked the defendant to remove it, and the defendant pulled away. At that point the officer removed the object "to see whether it was a gun." It was a brown paper bag, which, when opened, was found to contain nine "quarters" of crack cocaine. This court held that the plain feel exception did not apply, because there was no testimony that upon feeling the bag the officer believed it to contain either a weapon or contraband.
In State v. Hughes, 99-2554 (La.App. 4 Cir. 5/31/00), 765 So.2d 423, police observed the defendant with two other males standing in front of a grocery store. When the officers were seven to eight feet away from the defendant, he put a white object into his pants pocket and hurriedly entered the store. The officers followed and detained him. The testifying officer stated that a pat-down search was conducted, and a plastic bag was found in the defendant's right front pocket. The bag was found to contain a rock-like substance later determined to be cocaine. This court found that the plain feel exception did not apply, as there had been no testimony by the officer explaining what, if anything, he felt in the defendant's pocket that was immediately identifiable as contraband.
In State v. Littles, 98-2517 (La.App. 4 Cir. 9/15/99), 742 So.2d 735, police officers on patrol in a known drug area observed the defendant engaged in an apparent drug transaction, and stopped him. One officer testified that during a subsequent frisk he felt in the defendant's pants pocket a substance which, based on his experience, he immediately believed "was consistent with crack cocaine." This court held that this testimony established that the evidence was lawfully seized pursuant to the "plain feel" exception.
In State v. Williams, 98-3059 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, officers on patrol in a known drug area observed the defendant extending his hand toward another man, showing him an unidentifiable object. The other man stood with his hand out, palm up. When the officers stopped, the other man fled, with one officer in pursuit, while the defendant was approached and frisked by the other officer. The officer testified that he felt a large bulge in the defendant's right-hand pocket, which, based on his work in the narcotics division, he believed to be cocaine. The bulge turned out to be a bag containing forty-eight smaller bags of powdered cocaine. This court found that the officer's testimony established that the nature of the contents was immediately apparent, and thus, the "plain feel" exception applied.
In State v. Mitchell, 96-999 (La.App. 5 Cir. 3/25/97), 692 So.2d 1251, police stopped a motorist after he failed to stop at a stop sign. The defendant, a passenger, began acting nervously, and appeared to place something underneath his seat. He was removed from the vehicle and patted down. The officer testified that he felt a round object, which "appeared to be maybe contraband or something." The *413 court held that this was insufficient to establish a warrantless seizure pursuant to the "plain feel" exception.
Lipscomb, Brown and Hughes are distinguishable from the instant case in that in those cases the officers did not indicate that they believed the objects they felt during the frisks were contrabandor weapons. The facts in the instant case are stronger than in Mitchell, as defendant in the instant case was stopped by an officer experienced in making narcotics arrests, on a complaint that he had attempted to sell narcotics, and the officer said he believed what he felt during the frisk was in fact contraband. The facts in the instant case are not as strong as in the Louisiana Supreme Court's decision in Wilson, supra, or this court's decisions in Williams and Littles, simply because, as discussed above, Officer Gillard did not specify what type of contraband he felt in defendant's pants pocket.
The facts of the instant case, insofar as the applicability of the plain feel exception, are stronger than those in Fortier, where the officer said nothing about his subjective belief as to the object he felt. In the instant case, Officer Gillard stopped the defendant because a citizen had just informed him that the defendant had attempted to sell her daughter, a recovering "addict," illegal narcotics. Officer Gillard also noticed the defendant, on three occasions before being frisked, nervously move his hand into the pocket where the contraband was later detected. As in Fortier, considering the facts and circumstances of the instant case, one can "safely infer" some things. One can safely infer that any New Orleans police officer experienced in making drug arrests in the City of New Orleans, as Officer Gillard testified he was, had previously arrested individuals in possession of hard rocks of crack cocaine. One can thus safely infer that Officer Gillard, responding to a trustworthy complaint that the defendant had attempted to sell drugs, immediately recognized the "hard objects" he felt in the defendant's pocket not simply as some unknown type of contraband in the form of "hard objects," but as the all too commonly encountered rocks of crack cocaine. Accordingly, the "plain feel" exception is applicable.
The defendant notes that the cocaine was not found until after Officer Gillard had handcuffed him, and the record indicates that the defendant was not frisked until after he was handcuffed. However, the defendant does not articulate an argument that the cocaine was found only as a result of an illegal arrest, i.e., an arrest made without probable cause. Such an argument would fail, as even had Officer Gillard not handcuffed the defendant upon noticing him becoming increasingly nervous, seemingly preparing to flee, the cocaine would have been discovered during the ensuing frisk. That is, the discovery of the cocaine was inevitable, regardless of whether the defendant had been handcuffed or not, and regardless of whether the action of handcuffing defendant constituted an arrest made without the requisite probable cause. Nix v. Williams, 467 U.S. 431, 446-47, 104 S.Ct. 2501, 2510-11, 81 L.Ed.2d 377 (1984) (the exclusionary rule does not apply when the State proves that the unconstitutionally obtained evidence would inevitably have been found in a constitutional manner); State v. Tassin, 99-1692 (La.App. 4 Cir. 3/15/00), 758 So.2d 351, 354.
The trial court properly denied defendant's motion to suppress the evidence.
There is no merit to this assignment of error.
*414 For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] State v. Howard, unpub., 99-0525 (La.App. 4 Cir. 3/18/99).
[2] 338 So.2d 584 (La.1976).
[3] State v. Howard, unpub., 99-1452 (La.App. 4 Cir. 10/14/99).
[4] State v. Howard, unpub., 00-0654 (La.App. 4 Cir. 4/19/00).
[5] Criminal mischief by the giving of any false report or complaint to a law officer relative to the commission of, or the attempt to commit, a crime.