905 So.2d 379 (2005)
STATE of Louisiana
v.
Joseph K. SAM.
No. 05-KA-88.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 2005.
Rehearing Denied July 8, 2005.
*380 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne WallisAppellate Counsel, Vincent Paciera, Jr., Paige J. ClineTrial Counsel, Assistant District Attorneys, Gretna, Louisiana, for Appellee, State of Louisiana.
Frank Sloan, Mandeville, Louisiana, for Appellant, Joseph K. Sam.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
Defendant, Joseph K. Sam, appeals his conviction for possession with intent to distribute cocaine. For the following reasons, we affirm defendant's conviction, amend his enhanced sentence, affirm that sentence as amended, and remand for correction of an error patent on the face of the record.
On March 26, 2002, the Jefferson Parish District Attorney filed a bill of information charging defendant, Joseph K. Sam, with distribution of cocaine, in violation of La. *381 R.S. 40:967(A).[1] Defendant pled not guilty at arraignment. Subsequently, the District Attorney amended the bill to charge defendant with possession with intent to distribute cocaine.
On April 2, 2002, defendant filed a motion to suppress evidence on the grounds that the evidence was seized pursuant to an unlawful search. After hearings, the trial court denied defendant's motion to suppress evidence. This Court and the Louisiana Supreme Court denied defendant's pro se writ applications seeking review of the denial.
On April 28, 2004, against advice of counsel, defendant waived his right to a jury trial. After trial, the judge found defendant guilty as charged. On May 6, 2004, the trial judge sentenced defendant to fifteen years imprisonment at hard labor, with the first two years of the sentence to be served without benefit of parole, probation or suspension of sentence.
The State filed a multiple offender bill of information alleging that defendant was a third felony offender. On May 6, 2004, defendant denied the allegation. After a hearing, the trial judge found defendant to be a third felony offender, vacated the underlying sentence, and sentenced defendant to twenty-five years imprisonment at hard labor, without benefit of probation or suspension of sentence and without benefit of good time. Defendant appeals his underlying conviction.

Facts
The facts are taken from the testimony presented at the suppression hearings and trial. On March 7, 2002, between 10:15 and 10:30 a.m., Detective Robert Gerdes of the Jefferson Parish Sheriff's Office received information from a "confidential informant" that a wheelchair-bound double-amputee named "Kraig," was distributing cocaine from Room 101 at the Days Inn Motel at 3750 Westbank Expressway in Harvey. Further, the informant told Detective Gerdes that a black man known as "Kid," who drives a white Lincoln Continental, would be delivering cocaine to Kraig at the motel between 11:15 and 11:45 a.m. that morning. Detective Gerdes related this information to Sergeant Bruce Harrison of the Jefferson Parish Sheriff's Office.
Sergeant Harrison testified that Detective Gerdes told him that a white male with long black hair named "Kraig," who was a "double amputee in his legs" was distributing cocaine from Room 101 at the Days Inn. Sergeant Harrison and three other officers established surveillance of the motel around 11:00 a.m. on March 7, 2002. Sergeant Harrison testified that he observed a white male, who was a double amputee, coming out of Room 101 in a wheelchair. The man was accompanied by a female and another white male. The three individuals moved clothing and other items from Room 101 to 103.
At approximately 11:30 a.m., the officers spotted a white Lincoln Continental entering the motel's parking lot. Sergeant Harrison pulled his vehicle in front of defendant's car and another JPSO officer blocked defendant's vehicle from the rear. Defendant placed his vehicle in reverse, but stopped when he realized another police vehicle had blocked his vehicle. Sergeant Harrison and the other officers ran to defendant's vehicle with their weapons drawn and verbally identified themselves as police.
*382 Sergeant Harrison, with his badge displayed, tried to open defendant's vehicle's driver's side door, which was locked. When Sergeant Harrison ordered defendant to open the door, defendant reached for his right front pocket. Sergeant Harrison ordered defendant to stop reaching toward his pocket and unlock the vehicle's doors. Defendant complied with both orders and Sergeant Harrison removed defendant from the vehicle. Sergeant Harrison placed defendant face-down on the ground and patted defendant's right front pocket to check for weapons. As Sergeant Harrison patted defendant's pocket, he felt crack cocaine and placed defendant under arrest. Thereafter, he retrieved four plastic bags, two clear bags that contained a "chunky" white powder and two amber bags that contained large off-white "chunks," from defendant's right front pocket.
At trial, Charles Krone, who was accepted as an expert in forensic science, testified that the substances inside of the four bags seized from defendant tested positive for cocaine. The two clear bags contained 6.44 grams of cocaine hydrochloride. The two amber bags contained 5.53 grams of base cocaine, which is commonly referred to as crack cocaine.
Sergeant Harrison testified that he had been a police officer for twenty years, with eighteen of those years in narcotics enforcement. Sergeant Harrison, was accepted, without objection, as an expert in the field of use, packaging, distribution, and value of narcotics. According to Sergeant Harrison, the handling of crack cocaine was part of that expertise. Further, Sergeant Harrison testified that he had been qualified as a narcotics expert over one hundred times in Orleans Parish and in every section in the Twenty-Fourth Judicial District Court for Jefferson Parish.
At trial, Sergeant Harrison opined that defendant intended to distribute the cocaine that was in his possession because he had two different types of drugs in four individual packets that each weighed approximately the same amount. Further, the crack, which was broken into smaller pieces, appeared to be ready for retail distribution. According Lieutenant Harrison, twelve grams of cocaine, which is the amount that the defendant was holding, contains between 60 and 120 individual portions. Lieutenant Harrison stated that, in his estimation, one person could not consume the amount of crack cocaine that defendant was holding in one or two days, much less both the powdered and crack cocaine. Lieutenant Harrison also testified that the fact defendant was not carrying a pipe to smoke the crack or a straw to inhale the powder was inconsistent with possession for personal use. Lieutenant Harrison acknowledged that defendant was not in possession of any money or weapons.
At trial, defendant testified that he was going to the motel to rent a room to use drugs, not to deliver them. Defendant testified, at the suppression hearing, that, as soon as he pulled into the motel's parking lot, a van blocked him in the front and the police "bum rushed" his car. He instinctively put the vehicle in reverse, which automatically locked the car's doors.
According to defendant, after he stopped, ten police officers ran up to the car, yelled at him, beat on the vehicle's glass with their guns, and shot "some to the window." Defendant said that, initially, he was in shock but, when he realized what had happened, he unlocked the vehicle's doors. Sergeant Harrison grabbed him and slammed him on the ground. He said that the other officers began kicking him in his face and chin. Defendant said that Sergeant Harrison went directly into *383 his pocket and seized the crack cocaine. Defendant admitted that he had several prior convictions.
According to defendant, who was accepted as an expert in the field of cocaine consumption habits by cocaine addicts, the amount of cocaine seized from him would not be inconsistent with personal use. Defendant explained that, as in other retail markets, one obtains a better deal on drugs by buying in larger amounts. Defendant said that normally a single rock costs $20. When a user purchases an "eight ball," the user can "cut" ten rocks off of an "eight ball." He admitted that he paid $100 for each of the "eight ball" bags, which, in his estimation, equated to approximately half price per rock. Defendant did admit that even a drug user with a severe addiction would be unable to consume this amount of cocaine in two days.
After hearing testimony and reviewing evidence, the trial judge found defendant was guilty as charged of possession with intent to distribute cocaine. Defendant is appealing his conviction.
In his first assignment of error, defendant contends that the trial judge erred in denying his motion to suppress because Sergeant Harrison's testimony was so inconsistent that it should not have been believed. Defendant also contends that the seizure of the cocaine was unlawful under the "plain feel" exception in Minnesota v. Dickerson, 508 U.S. 366, 377, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334, (1993), since Sergeant Harrison testified that he had to "squeeze" the cocaine to identify it as contraband. The State responds that Sergeant Harrison's testimony was consistent. The State also responds that Sergeant Harrison squeezed the bags in order to ascertain whether there was a weapon inside the bags, not to determine whether the bags contained drugs, and that Sergeant Harrison immediately knew the bags contained rock cocaine.
In a hearing on a motion to suppress evidence, the State has the burden of establishing the admissibility of evidence seized without a warrant. La.C.Cr.P. art. 703(D). In reviewing the trial court's ruling on a motion to suppress, the appellate court may review the evidence presented at trial in addition to the evidence presented at the hearing on the motion to suppress. State v. Franklin, 03-287 (La.App. 5 Cir. 9/16/03), 858 So.2d 68, 70, writ denied, 03-3062 (La.3/12/04), 869 So.2d 817.
Law enforcement officers are authorized by La.C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to conduct investigatory stops which allow officers to stop and interrogate a person reasonably suspected of criminal activity.[2]State v. Gresham, 97-1158 (La.App. 5 Cir. 4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200. See, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion for an investigatory stop is something less than probable cause and is determined under the facts and circumstances of each *384 case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. State v. Sanders, 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, 240, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
When a police officer observes conduct which leads him to reasonably conclude that criminal activity may be afoot and that the persons with whom he is dealing may be armed and dangerous, he is entitled to conduct a carefully limited search to discover weapons that might be used to assault him, in the course of the investigatory stop. State v. Gresham, 712 So.2d at 951 (citing Terry v. Ohio, 88 S.Ct. at 1884-1885). See also, La.C.Cr.P. art. 215.1(B). A weapons pat down is justified under circumstances in which a reasonably prudent person would be warranted in a belief that his or another's safety was in danger. State v. Martinez, 04-38 (La.App. 5 Cir. 4/27/04), 874 So.2d 272, 277. When an officer is conducting a pat down search, the "plain feel" exception allows the seizure of contraband where the incriminating character of the object is immediately apparent to the officer without any additional form of search or examination to identify it as contraband, pursuant to Minnesota v. Dickerson, 508 U.S. 366, 377, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334, (1993). See, State v. Haywood, 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 577.
Defendant argues that Sergeant Harrison's testimony was inconsistent. According to defendant, Sergeant Harrison's testimony on direct examination at the suppression hearing and later at trial indicated that he immediately recognized the cocaine in defendant's pocket, whereas his cross-examination testimony at the suppression hearing revealed that he had to manipulate the cocaine in order to ascertain its identity. On direct examination at the suppression hearing, Sergeant Harrison testified that "he immediately felt what [he] recognized as crack cocaine" when feeling defendant's pocket. Likewise, at trial, Sergeant Harrison testified that,"[a]s soon as I touched that pocket, I felt objects that I recognized as crack cocaine." On cross-examination at the suppression hearing, Sergeant Harrison was questioned extensively and repeatedly as to how he actually touched the defendant's pocket during the patdown. Sergeant Harrison explained that he did not reach into defendant's pocket, but turned defendant up slightly and felt the pocket. In response to defense counsel's request, Sergeant Harrison demonstrated for the court how he patted defendant's pocket to determine if defendant was carrying a weapon.
In this case, Sergeant Harrison's testimony on cross-examination at the suppression hearing does not conflict with his direct examination or his trial testimony. Rather, his testimony reflects that he was in the course of performing a weapons pat down when he felt an object, which he squeezed to determine its identity. He stated that he knew simultaneously that the object was not a weapon, but was, in fact, crack cocaine. This Court has stated that the "[c]redibility of witnesses is best determined by the trial judge and is not to be upset on appeal unless the trial judge abuses his or her discretion." State v. Snavely, 99-1223 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, 957, writ denied, 00-1439 (La.2/16/01), 785 So.2d 840. In this case, we find no inconsistency in Sergeant Harrison's testimony and no abuse of the trial judge's discretion in accepting that testimony.
Defendant also argues that the search and seizure of the cocaine exceeded the scope of "plain feel" and was, thus, *385 unlawful. In Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the United States Supreme Court established the "plain feel" doctrine, to apply to situations where an officer discovers contraband through the sense of touch during an otherwise lawful Terry search. The Dickerson court analogized the situation to the "plain view" doctrine, explaining as follows:
If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.
Dickerson, 508 U.S. at 375, 113 S.Ct. at 2137.
In Dickerson, the Court held that an officer's search of a suspect exceeded the scope of a Terry search when the officer continued to explore the suspect's pocket after having concluded it contained no weapon. There, police officers stopped people they saw leaving a known crack house. The officer frisked defendant Dickerson for weapons, but found none. However, the officer felt a small lump in Dickerson's front jacket pocket, which he examined by manipulating it and squeezing with his fingers. After concluding it was a rock of crack cocaine, the officer reached into Dickerson's pocket and seized it. Dickerson, 508 U.S. at 368-369, 113 S.Ct. at 2133-2134.
The Supreme Court framed the issue as whether the officer was acting within the lawful bounds of a Terry pat down when he gained probable cause to believe that the lump in Dickerson's jacket was contraband. The Supreme Court found that the officer's continued exploration of the pocket after he had decided the pocket contained no weapon was not related to the sole justification of a Terry search, which is the protection of the police officer and others nearby. As such, the Dickerson court held that the search exceeded the bounds of Terry. Dickerson, 508 U.S. at 379, 113 S.Ct. at 2139.
In State v. Broussard, 00-3230 (La.5/24/02), 816 So.2d 1284, the Louisiana Supreme Court held that the search and seizure of cocaine was justified under the "plain feel" doctrine of Minnesota v. Dickerson. In that case, while in the course of a Terry pat down, the officer felt lumps and heard the crinkle of plastic in defendant's pocket, which he knew from his years of experience to be consistent with drug packaging of crack cocaine. Thus, the Broussard court held that the evidence was obtained by lawful means. Id. at 1289. Likewise, in State v. Wilson, 00-0178 (La.12/8/00), 775 So.2d 1051, the Louisiana Supreme Court held that the officer's "plain feel" through defendant's jacket of the packet containing rock cocaine, which the officer immediately identified on the basis of his long experience in the field, gave him probable cause to seize the packet and to arrest the defendant. Id. at 1052-1053.
Similarly, this Court held in State v. Haywood, 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 578, that the cocaine was lawfully seized when the officer felt a cellophane wrapper with objects that he recognized immediately to be crack cocaine during a pat down of defendant's sock. In State v. Howard, 00-2405 (La. App. 4 Cir. 4/11/01), 787 So.2d 404, 411, writ denied, 01-1381 (La.4/19/02), 813 So.2d 417, the court upheld the seizure of "hard objects" felt in the defendant's pocket pursuant to the "plain feel" exception. In that case, the officer was responding to *386 a citizen's complaint that an individual, later identified as defendant, had attempted to sell narcotics to her daughter, a recovering drug addict. After canvassing the area, the officers found defendant and stopped him. Pursuant to a pat down, the officer detected "small hard objects" in the defendant's pocket, which the officer believed, based on his prior narcotics experience and the citizen complaint, was "some type of `contraband.'" Id. at 407.
In finding the seizure lawful under the plain feel exception, the Howard court stated,
One can safely infer that any New Orleans police officer experienced in making drug arrests in the City of New Orleans, as Officer Gillard testified he was, had previously arrested individuals in possession of hard rocks of crack cocaine. One can thus safely infer that Officer Gillard, responding to a trustworthy complaint that the defendant had attempted to sell drugs, immediately recognized the "hard objects" he felt in the defendant's pocket not simply as some unknown type of contraband in the form of "hard objects," but as the all too commonly encountered rocks of crack cocaine.
Id. at 413.
In contrast, this Court held that the seizure of contraband following a lawful pat down was not authorized by the "plain feel" exception in State v. Mitchell, 96-999 (La.App. 5 Cir. 3/25/97), 692 So.2d 1251, 1252. In that case, as in Dickerson, an officer felt a rock-like substance while conducting a frisk for weapons. The officer testified that he knew when he felt the object that it was not a weapon, but that it might be contraband. It was not until the officer removed the object from the defendant's pocket that he was able to determine it was cocaine. Id. at 1253-1254. Similarly in State v. Duckett, 99-314 (La. App. 5 Cir. 7/27/99), 740 So.2d 227, which cited Mitchell, this Court held the seizure of a plastic bag containing white powder and four plastic bags containing marijuana was not justified under the "plain feel" exception. In Duckett, the officer did not find any weapons on the defendant. Rather, he felt a plastic bag, but not drugs. This Court concluded that the police exceeded the lawful bounds of a Terry search because the officer had to "further manipulate" the bag in order to determine it contained drugs. State v. Duckett, 740 So.2d at 232.
Here, Sergeant Harrison, an officer with extensive police experience in narcotics, stated that, when he patted defendant's pocket for weapons, he immediately knew that the objects were large rocks of crack cocaine. We find that the facts of this case are similar to State v. Howard, supra, and State v. Broussard, supra. Unlike the officers in Mitchell, Dickerson, and Duckett, Sergeant Harrison concluded that the object was contraband simultaneously with his determination that the object was not a weapon. We find that Sergeant Harrison was still within the scope of a Terry search when he squeezed the pocket, and was not conducting the type of exploratory search condemned by Terry. See, Minnesota v. Dickerson, supra. We find that the cocaine was, therefore, lawfully seized pursuant to the "plain feel" exception. Accordingly, we find that the trial court did not err in denying defendant's motion to suppress evidence.
In his second assignment of error, defendant contends that the trial court erred in restricting "good time" benefits when imposing the enhanced sentence. The State concedes that the trial judge was without authority to deny good time eligibility and urges this Court to correct the sentence.
*387 The transcript and commitment reflect the trial judge denied good time eligibility when imposing the enhanced sentence. La. R.S. 15:571.3(C) prohibits diminution of sentence under certain circumstances. However, the Louisiana Supreme Court has held that the district court has no role in determining eligibility for diminution of sentence pursuant to LSA-R.S. 15:571.3(C). Accord, State ex rel. Hebert v. State, 03-2474 (La.10/1/04), 883 So.2d 1003; State v. Narcisse, 97-3161 (La.6/26/98), 714 So.2d 698. In State ex rel. Simmons v. Stalder, 93-1852 (La.1/26/96), 666 So.2d 661, the supreme court found that the trial court erred in pronouncing the defendant's habitual offender sentence without benefit of good time.
La.C.Cr.P. art. 882(A) provides that an illegal sentence may be corrected at any time by the court that imposed the sentence or by the appellate court on review. Accordingly, we amend defendant's sentence to vacate the prohibition on good time eligibility and remand the matter for the district court to make an entry in the minutes reflecting this change. See, State ex rel. Hebert v. State, supra.
Finally, we have reviewed the record for errors patent, according to La. C.Cr.P. art. 920. We note that the trial minute entry and both commitments reflect defendant was charged with and convicted of "DIST/WITD OF A CDS-DIST/COCAINE," apparently indicating distribution of cocaine. While defendant was originally charged with distribution of cocaine, the transcripts reflect that defendant proceeded to trial on the amended charge of possession with intent to distribute cocaine and that he was convicted of this amended charge. It is additionally noted that the minute entry for March 18, 2004, which was approximately one month before the defendant's trial in this case, indicates that the "Defendant took a plea after lunch and the witness on the joseph sam case was let go[.]" However, the remainder of the record reflects that defendant subsequently proceeded to trial, after which he was convicted and sentenced.
Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, we remand to allow the trial judge to correct the commitments and the minute entries to be consistent with the transcripts.
In conclusion, defendant's underlying conviction is affirmed and his enhanced sentence is amended and affirmed as amended. This matter is remanded for further proceedings consistent with this opinion.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED AS AMENDED; REMANDED.
NOTES
[1] In the same bill of information, the District Attorney also charged Kraig Marks with distribution of cocaine. On September 9, 2003, however, the District Attorney severed his charge for trial. The charge against Kraig Marks is, therefore, not the subject of this appeal.
[2] La.C.Cr.P. art. 215.1 provides in pertinent part:

A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
....