DENNIS R. BAGNERIS, SR., Judge.
 

 hP.L. appeals the judgment of the Juvenile Court for the Parish of Orleans denying his motion to suppress the evidence. P.L. requests that this Court vacate the adjudication of delinquency on the grounds that his motion to suppress should have been granted. For the following reasons, we affirm.
 

 Facts/Procedural History
 

 The State filed a delinquency petition charging P.L. with violating La. R.S. 14:108, resisting an officer, and La. R.S. 14:95.8, illegal possession of a handgun by a juvenile. P.L. filed a motion to suppress the evidence, which the juvenile court deferred to the adjudication hearing. On June 1, 2011, the juvenile court held the adjudication hearing.
 

 Officer Mitchell testified that he was on patrol duty in the St. Roch area the night of February 25, 2011, and that he was following Officer Watson when a citizen stopped Officer Watson’s vehicle. Officer Mitchell stated that he also approached Officer Watson’s vehicle and learned from the citizen that three black males were in the backyard of an abandoned residence and the citizen could hear some sort of commotion. Officer Mitchell testified that the citizen believed the three males to be juveniles and further described one male as wearing a black ⅛⅛⅛⅛ and dark colored jeans and the other two males as wearing white t-shirts and dark colored pants. After obtaining this information, Officer Mitchell and the other patrol offi
 
 *985
 
 cers proceeded to the abandoned residence to see what was going on considering that it was after curfew hours for juveniles.
 

 As the officers approached the abandoned residence, Officer Mitchell testified that they could hear noises emanating from the backyard of the abandoned residence. Officer Mitchell noted that he shined his flashlight towards the backyard as another officer turned the patrol vehicle’s spotlight on the area. Officer Mitchell stated that he observed several subjects in the backyard. Officer Mitchell stated that he requested that the individuals come to where the officers were. At that point, two of the subjects ran, and Officer Mitchell testified that he chased them. Officer Mitchell stated that the two individuals who ran were black males and one was wearing a white t-shirt and the other was wearing a white tank shirt.
 

 Officer Mitchell revealed that as he chased the two individuals, they turned into an empty lot and one of them withdrew an object from his pants. Officer Mitchell recognized the object as the magazine to a semi-automatic weapon. Officer Mitchell testified that he watched as the individual tossed the weapon into the empty lot and continued running. Officer Mitchell stated that he managed to cut off the individual who tossed the weapon. Officer Mitchell testified that when that individual saw Officer Mitchell with his gun drawn and was ordered to the ground, the individual complied and was placed under arrest. In court, Officer Mitchell positively identified P.L. as the individual who tossed the weapon and that was placed under arrest. Officer Mitchell testified that he did not conduct any fingerprint or DNA analysis on the gun to compare it to P.L.
 

 IsOfficer Mitchell reviewed pictures taken of the abandoned residence and the area where the arrest took place. Officer Mitchell revealed that the “MMG” located on the abandoned residence was the logo for the Mad Mafia Gang. Officer Mitchell testified that the complainant did not provide a name or address and that he believed that the complainant did not want to be recognized because he lived in the neighborhood and feared retaliation from the gang.
 

 After Officer Mitchell testified, the parties argued the motion to suppress. The juvenile court denied the motion to suppress, finding that the officers possessed reasonable suspicion based on the information received from the complainant of individuals that appeared to be juveniles in an abandoned yard, late at night, after curfew, in addition to the flight and other circumstances. Thereafter, the juvenile court continued with the adjudication hearing.
 

 At the adjudication hearing, Officer Watson testified that she was on patrol duty the night of February 25, 2011, in the area near Music and N. Galvez. Officer Watson revealed that she is familiar with the neighborhood as she used to live nearby and still attends church in the neighborhood. Officer Watson stated that an individual approached her vehicle and made a motion with his hand. Officer Watson stated that she exited her vehicle and learned that three individuals, who appeared to be juveniles, were in the backyard of an abandoned residence. After learning this information, Officer Watson testified that she and the other officers proceeded to the abandoned residence. Officer Watson testified that she keeps her window rolled down when she is in on patrol, and as they approached the abandoned residence, she could hear a rattling noise. Officer Watson shined her spotlight down the alleyway to the rear of the abandoned residence and observed three individuals who fit the description provided by
 
 *986
 
 the complainant climbing on |4a chain link fence. Officer Watson stated that as she began to exit her vehicle, two of the individuals took off running. Officer Watson noticed Officer Mitchell in pursuit of the two, re-entered her vehicle, and followed to lend assistance to Officer Mitchell. Officer Watson testified that she did not see P.L. with a gun.
 

 Next, at trial, P.L. called Terry Green to testify. Mr. Green stated that he and P.L. had been friends for about two years. Mr. Green testified that on February 25, 2011, he spent time with P.L. during the day and that P.L. was wearing a tank top and some jeans. Mr. Green stated that P.L. did not have a gun or any bulge. Mr. Green testified that later that night, he received a telephone call from P.L. telling him to come to a residence where P.L. was hanging out with some girls. Mr. Green stated that he proceeded to the area and about eight or nine people were hanging out on the corner. Shortly after he arrived, Mr. Green testified that the police arrived and that when P.L. saw the police, he ran. Mr. Green testified that when the police appeared, P.L. was in the front of the house, on the steps, talking to some girls.
 

 P.L. testified that the police have bothered him in the past and that he is afraid of the police. P.L. stated that on February 25, 2011, he was talking to some girls at 2005 St. Roch and that ten or eleven people were out in front of the residence. P.L. testified that he was never in the backyard of the residence. P.L. stated that when the police appeared and shined their light, he took off running. P.L. stated that he was scared when the officer drew his gun, so he ran. P.L. stated that he did not have a gun.
 
 [1]
 

 |sThe juvenile court adjudicated P.L. delinquent, finding P.L. committed the offenses of flight from an officer and illegal possession of a handgun by a juvenile.
 

 Standard of Review
 

 A trial judge’s ruling on a motion to suppress the evidence is entitled to great weight, because the trial judge has the opportunity to observe the witnesses and weigh the credibility of their testimony.
 
 State of Louisiana in the Interest of J.S.,
 
 2008-1401, p. 4 (La.App. 4 Cir. 2/18/09), 6 So.3d 904, 908. The State bears the burden of proving the admissibility of all evidence seized without a warrant during a hearing on a motion to suppress. La.C.Cr.P. art. 703(D);
 
 State v. Howard,
 
 2000-2405, p. 3 (La.App. 4 Cir. 4/11/01), 787 So.2d 404, 407.
 

 Discussion
 

 P.L. argues the juvenile court erred in denying the motion to suppress, thereby admitting evidence obtained as the result of an unlawful arrest and obtained in violation of the U.S. and Louisiana Constitutions.
 

 The Fourth Amendment of the U.S. Constitution and Art. I, § 5 of the Louisiana Constitution protect persons from unreasonable searches and seizures. In discussing searches and seizures, this Court recently noted:
 

 In an effort to discourage police misconduct, evidence recovered as a result of an unconstitutional search or seizure is inadmissible.
 
 State v. Tucker,
 
 626 So.2d 707, 710 (La.1993);
 
 State v. Sykes,
 
 [20]04-1199, 04-0947, p. 4 (La.App. 4 Cir. 3/9/05), 900 So.2d 156, 158. Thus, evidence abandoned by a citizen and recovered by the police as a direct result
 

 
 *987
 
 of an unconstitutional seizure may not be used in a resulting prosecution against the citizen.
 
 Tucker,
 
 626 So.2d at 710;
 
 State v. Chopin,
 
 372 So.2d 1222, 1224 (La.1979). If, however, a citizen abandons or otherwise disposes of property prior to any unlawful intrusion into the citizen’s right to be free from governmental interference, then the property may be lawfully seized and used against the citizen in a resulting prosecution.
 
 Tucker,
 
 626 So.2d at 710;
 
 Sykes,
 
 [20]04-1199, 04-0947, p. 4, 900 So.2d at 159-160;
 
 Chopin,
 
 372 So.2d at 1224;
 
 State v. Ryan,
 
 358 So.2d 1274, 1275 (La.1978).
 

 State of Louisiana in the Interest of J.S.,
 
 2008-1401, pp. 4-5, 6 So.3d at 908.
 

 A police officer may make a lawful stop of a person in a public place without a warrant when he reasonably suspects the person is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. La.C.Cr.P. art. 215.1. A tip received from a citizen may provide the police with the required reasonable suspicion.
 
 Florida v. J.L.,
 
 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).
 

 P.L. argues that the individual reporting suspicious behavior provided an anonymous tip which did not bestow upon the police reasonable suspicion to make an investigatory stop. P.L. argues that the tip provided to the police was from an anonymous complainant that was unknown to the officers. P.L. cites
 
 Florida v. J.L.
 
 in support of his argument. In that case, the Court noted that “an anonymous tip alone seldom demonstrates the informant’s basis of knowledge or veracity.”
 
 Florida v. J.L.,
 
 529 U.S. at 270, 120 S.Ct. at 1378. However, the Court went on to state that “there are situations in which an anonymous tip, suitably corroborated, exhibits ‘sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.’ ”
 
 Id.
 
 In
 
 J.L.,
 
 an anonymous caller reported to the police that a young black male in a plaid shirt at a particular bus stop was carrying a gun.
 
 Id.,
 
 529 U.S. at 271, 120 S.Ct. 1375. Officers arrived approximately six minutes after the tip was received and noticed three young men at the bus stop, one in a plaid shirt. There was nothing to indicate that any were engaged in illegal activity or were carrying weapons. Yet, one officer approached J.L. and told him to put his hands on the bus stop, frisked him, and recovered a gun.
 
 Id.
 
 The Florida Supreme Court held the search invalid under the Fourth Amendment.
 
 Id.,
 
 529 U.S. at 274, 120 S.Ct. at 1380. The U.S. Supreme Court affirmed, holding that an anonymous tip lacking indicia of reliability does not justify a stop and frisk.
 
 Id.
 

 In
 
 State v. Howard,
 
 this Court reviewed several cases in which anonymous tip were provided and summarized them as follows:
 

 In
 
 Adams v. Williams,
 
 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the U.S. Supreme Court found that a police officer had reasonable suspicion to make an investigatory stop of a person seated in a nearby parked car, where the officer had just received a tip from a known reliable informant that the person was carrying narcotics, as well as a gun in his waistband. The court distinguished the case from one involving an anonymous informant, noting that the informant, who had given the tip in person, may well have been subject to arrest for making a false complaint had the investigation proved the tip unfounded.
 

 In
 
 State v. Smiley,
 
 99-0065 (La.App. 4 Cir. 3/3/99), 729 So.2d 743,
 
 writ denied,
 
 99-0914 (La.5/14/99), 743 So.2d 651, two police officers on Bourbon Street were approached by an “unknown” citizen, who reported that an individual in a
 
 *988
 
 nearby truck had just tried to sell him drugs. As the officers observed the truck, three individuals exited the truck and went into a nearby bar. The unknown citizen identified one of them as the individual who had tried to sell him drugs. This court held that under those facts police had reasonable suspicion to detain the individual to investigate the citizen’s complaint. Even though the complaint came from an “unknown” citizen, the circumstances surrounding the giving of it indicated a certain degree of trustworthiness.
 

 In
 
 State v. Fayard,
 
 537 So.2d 347 (La.App. 4 Cir.1988),
 
 writ denied,
 
 541 So.2d 871 (La.1989), the doorman of a lounge alerted a police officer working a paid detail that he felt a gun on the defendant’s person when the defendant bumped into him. A lounge patron also informed the officer that the defendant resembled a man wanted for recent boat thefts in the area. A backup officer subsequently observed a bulge under the defendant’s jacket, confirming for him the information received in the initial complaint by the doorman. This court held that this evidence was sufficient to justify an investigatory stop.
 

 In
 
 State v. Mims,
 
 98-2572 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, a police officer received information from a “registered” informant, of unknown reliability, that a particularly described individual was selling cocaine on St. Louis Street, between Bourbon and Burgundy Streets, in the French Quarter. The officer went to the location fifteen minutes later, saw an individual fitting the description | ^given by the informant, and made an investigatory stop. This court held that merely verifying a clothing description given by a “registered” informant of unknown reliability was not sufficient corroborating evidence in and of itself to justify the stop.
 

 State v. Howard,
 
 2000-2405, pp. 5-6, 787 So.2d at 408-409.
 

 After considering the law and the cases cited above, the
 
 Howard
 
 court went on to find that the tip received by the officers therein provided reasonable suspicion to justify a stop of the defendant.
 
 State v. Howard,
 
 2000-2405, pp. 7-8, 787 So.2d at 409. That tip was provided by a person the officers stopped as she appeared visibly upset.
 
 Id.,
 
 p. 6, 787 So.2d at 409. The officers learned that a person named “Jamal”, wearing blue jeans and a white t-shirt, had attempted to sell her daughter drugs. The complainant reported to the police that she had informed individuals in the area not to sell drugs to her daughter as her daughter was a recovering drug addict. The officers stated that they canvassed the area, and in a short time came upon the defendant, who fit the description. The officers stopped the defendant and conducted a pat down. One officer noticed the defendant looking nervous and observed the defendant attempting to place his hand in his right pocket several times. The officer felt the outside of the pocket and detected what he believed, from his experience, to be contraband. The officer removed the object, which proved to be crack cocaine. Mr. Howard argued that the complainant was an “uncooperative tipster of unknown reliability.”
 
 Id.,
 
 p. 7, 787 So.2d at 409. The Court noted that while the complainant was not a known, reliable informant, she was not an anonymous tipster, such as a telephone tipster. Further, the Court stated it was understandable that the citizen did not wish to give any further information, perhaps fearing retaliation, recognizing the harsh realities for those living in drug-infested areas. The Court found that her reticence should |9not undermine her credibility and found that the officers had no reason to doubt her information.
 
 Id.
 

 
 *989
 
 As in
 
 Howard,
 
 the officers herein received a tip from a complainant in person, not an anonymous telephone tip. The complainant herein, who lived in the neighborhood, did not wish to be identified for fear of retaliation. The juvenile court judge heard testimony that gang insignia appeared on the abandoned house where P.L. and the others were found. The officers had no reason to doubt the credibility of the information provided to them by the complainant. Thus, the tip provided the officers with reasonable suspicion to conduct a stop pursuant to La.C.Cr.P. art. 215.1.
 

 In further distinction from
 
 Florida v. J.L.,
 
 the officers corroborated the tip that was received from the complainant herein. The officers proceeded to the address provided by the complainant. The officers noted the house was abandoned and that there were individuals fitting the provided description in the backyard. The officers possessed reasonable suspicion that the individuals were committing a trespass. While P.L. argues that there were no signs posted on the abandoned house, there is no requirement that signs forbidding entrance be posted. Indeed, the law provides that “no person shall enter upon immovable property owned by another without express, legal, or implied authorization.” La. R.S. 14:63. As the immovable property was abandoned, the officers possessed reasonable suspicion that the individuals in the backyard did not possess express, legal, or implied authority to be there.
 

 In addition to his argument regarding the tip, P.L. also argued that flight from an officer does not provide sufficient justification for an investigatory stop. P.L. argues that his hour of arrest was 8:10 p.m., so the officers had no reason to | ,nbelieve that he was out after curfew. Further, P.L. submits that there was no evidence that he had committed a crime, was committing a crime, or was about to commit a crime. P.L. argues there were no “No Trespassing” signs on the abandoned residence and no other indication that his presence in the backyard of home, owned by no one, was prohibited.- P.L.’s argument is specious. While there is no proof in the record that the abandoned residence contained a “No Trespassing” sign, the law requires that a person not enter immovable property without authorization, whether a sign is posted or not. The record lacked proof that P.L. possessed authority, express, legal, or implied, to be in the backyard of the abandoned residence. P.L. correctly notes that flight from an officer alone is insufficient to justify an investigatory stop, but unprovoked flight at the sight of an officer is a factor which may contribute to the finding of reasonable cause for a stop.
 
 State v. Alvarez,
 
 2009-0328, p. 3 (La.3/16/10), 31 So.3d 1022, 1024.
 

 "While the record lacks proof as to the time of the arrest, the record contains a risk assessment instrument which stated that the time of intake was 8:56 p.m. Thus, we conclude the arrest occurred shortly before 8:56 p.m. While the officers may not have had reason to believe that P.L. was out after curfew, they had reason to believe that he was committing a criminal trespass as the residence was abandoned. The belief that a criminal trespass was being committed, along with the unprovoked flight at the sight of the officers, provided the officers with reasonable cause to conduct an investigatory stop.
 

 In this case, there was no unlawful intrusion into P.L.’s right to be free from governmental interference. Officer Mitchell possessed reasonable cause to conduct an investigatory stop. Thus, at the time that P.L. abandoned the semi-automatic handgun, Officer Mitchell possessed the right to seize the semi-jautomaticn hand
 
 *990
 
 gun. As the semi-automatic handgun was lawfully seized, there was no error in the use of it against P.L. in the resulting prosecution.'-
 

 We find that the juvenile court did not abuse its discretion in denying the motion to suppress evidence as the officers’ possessed reasonable suspicion to conduct a stop of P.L. and lawfully seized the semiautomatic handgun abandoned by P.L. Therefore, P.L.’s adjudication as a delinquent must be affirmed.
 

 Errors Patent
 

 However, our review of the record reveals one error patent which must be addressed. In
 
 State of Louisiana in the Interest of A.H.,
 
 2010-1673, p. 9 (La.App. 4 Cir. 4/20/11), 65 So.3d 679, 685, we determined that conducting an error patent review in juvenile delinquency cases was warranted.
 

 La. Ch.C. art. 844 provides that the petition utilized to commence a juvenile delinquency proceeding must be verified. The petition utilized to commence the proceedings against P.L. herein is unverified. However, in
 
 State in the Interest of A.H.,
 
 we found that the prosecution of A.H. ratified the unverified petition.
 
 State in the Interest of A.H.,
 
 2010-1673, p. 9, 65 So.3d at 685. Additionally, the Supreme Court has noted that the proper remedy for a lack of a signature on a petition is a motion to quash. If the motion to quash is not filed, the error is waived.
 
 State v. White,
 
 404 So.2d 1202, 1205 (La.1981).
 

 Thus, while our review determined that the State failed to obtain a verification of the petition, we find that the prosecution of P.L. ratified the unverified petition. Further, P.L. failed to file a motion to quash the petition. Therefore, we deem the error to be harmless.
 

 112Pecree
 

 Accordingly, we affirm the district court’s denial of P.L.’s motion to suppress and affirm the adjudication of delinquency for the offenses of flight from an officer and illegal possession of a handgun by a juvenile.
 

 AFFIRMED
 

 [1]
 

 . P.L. testified that he was injured when a police officer hit him with a radio. P.L. testified that he went to the hospital on February 25, 2001, after being arrested. However, no argument was presented in the appellant’s brief regarding the alleged injuries.